UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HOWARD ZERINGUE					CIVIL ACTION

VERSUS						NO. 15-4516

ALLIS-CHAMBERS CORP., ET AL.			SECTION A(5)

### ORDER AND REASONS

The following motion is before the Court: **Motion to Remand (Rec. Doc. 12)** filed by plaintiff Howard Zeringue. Defendant Crane Co. opposes the motion. The motion, submitted to the Court on November 4, 2015, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED.

**I.	Background**

Plaintiff Howard Zeringue filed this personal injury action in state court against a bevy of "asbestos defendants." Zeringue contracted mesothelioma and he attributes his injurious condition to exposure to asbestos-containing products over the course of several years during his lifetime.

One of the specific sources of exposure that Zeringue alleges is his time serving aboard United States Navy vessels during the Korean War. Specifically, Zeringue served in the United States Navy from June 9, 1952, until June 12, 1956, aboard the USS Clarion River, the USS Plumas County, and the USS Balduck. (Rec. Doc. 1-2, Petition ¶ 3). Zeringue served in several different capacities aboard those vessels but regardless of capacity, each day was virtually the same: Zeringue "would wake up in his bunk and swing down to the deck using the deteriorating asbestos covered pipes that ran just above his bed and proceed through the engine/boiler room where asbestos containing products were also regularly and frequently being disturbed." (*Id.*).

All of Zeringue's claims arise under state law and the parties are not completely diverse in citizenship. Thus, on the face of the Petition the Court lacks subject matter jurisdiction. Defendant Crane nonetheless removed the suit to this Court pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute. In its Notice of Removal Crane alleges that any product that it manufactured for or supplied to the Navy, including accompanying labels or warnings, would be subject to the Navy's specifications and requirements. (Rec. Doc. 1, Notice of Removal ¶ 2). Even more specifically, Crane states that federal officers exercised their discretion regarding whether 1) asbestos was used in the product, and 2) whether a warning would accompany the product (and if so what it would say). (*Id.*).

Zeringue now moves to remand the case to state court arguing that Crane does not meet the requirements for federal officer removal under § 1442(a)(1).

## II.   Discussion

Title 28, § 1442, entitled Federal Officers or Agencies Sued or Prosecuted, states in relevant part:

> **(a)** A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
> **(1)** The United States or any agency thereof or any officer **(or any person acting under that officer)** of the United States or of any agency thereof, in an official or individual capacity, **for or relating to any act under color of such office** or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C.A. § 1442(a)(1) (West 2006 & Supp. 2015) (emphasis added).

Section 1442(a) is a jurisdictional statute that grants district court jurisdiction over cases in which a "federal officer" is a defendant who alleges a colorable federal defense. *Mesa v. California*, 489 U.S. 121, 136 (1989). It is the raising of a federal question in the officer's removal

petition that constitutes the federal law under which the action against the federal officer arises for Article III purposes. *Id.* The removal statute itself merely serves to overcome the well-pleaded complaint rule which would otherwise preclude removal even if a federal defense were alleged. *Id.* (citing V*erlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 491 (1983); *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986); *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908)); *see Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999). In meeting its burden the defendant is not required to present an "airtight case on the merits," but it must demonstrate a "colorable" federal defense. *Acker*, 527 U.S. at 432.

In *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), the Supreme Court concluded that independent contractors who supply military equipment to the federal government are entitled, under certain circumstances, to the same discretionary immunity defense that protects the government from state tort liability. The issue in *Boyle* was an alleged design defect in a military helicopter escape hatch. The contractor in that case had built the helicopter pursuant to the government's specific design criteria—that criteria required an escape hatch that did not conform with state tort law standards—and a pilot died as a result of that design. The Supreme Court held that liability for faulty design of military equipment cannot be imposed under state law on a government contractor when, 1) the United States approved reasonably precise specifications; 2) the equipment conformed to those specifications; and 3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. *Id.* at 512. The Court reasoned that it made little sense to insulate the government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production. *Id.*

Thus, government contractor immunity is derived from the government's immunity from suit where the performance of a discretionary function is at issue. *Kerstetter v. Pac. Scientific Co.*, 210 F.3d 431, 435 (5th Cir. 2000) (citing *Boyle*, 487 U.S. at 511). In essence, for the defense to apply, the suit must involve a situation in which a discretionary function of the United States would be "frustrated" by the imposition of state tort law. *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 460 (2010).[1]

To qualify for removal under § 1442(a)(1), the removing defendant must show that it is a "person" within the meaning of the statute, that the defendant acted pursuant to a federal officer's directions, and that a causal connection exists between the defendant's actions under color of federal office and the plaintiff's claims. *Bartel v. Alcoa Steamship Co.*, 805 F.3d 169, 172 (5th Cir. 2015) (quoting *Winters v. Shamrock Chem. Co.*, 149 F.3d 387, 398-400 (5th Cir. 1998)). Even where the defendant can show that it acted pursuant to a federal officer's directions, removal will not be proper unless he can also establish the requisite causal connection between the defendant's actions under color of federal office and the plaintiff's claims. *See id.*

To be sure, Crane's Notice of Removal in this case *alleges* all of the elements for the federal government contractor defense and for federal officer removal under § 1442(a). But in a manner similar to the way a defendant might challenge unsupported legal conclusions in a complaint, Zeringue challenges the factual assertions that Crane relies upon for federal jurisdiction. Zeringue does not suggest that the factual assertions are actually false. Rather Zeringue contends that Crane is making factual allegations that it cannot prove, and about which

---

[1] In the context of a failure to warn case, the defendant's burden as to the *Boyle* factors translates as: 1) the federal government exercised discretion and approved warnings for the product; 2) the warnings the defendant provided about the product conformed to the federal government specification; and 3) the defendant warned the federal government about dangers known to the defendant but not the government. *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010) (citing *Boyle*, 487 U.S. at 512).

its witnesses are merely speculating. Zeringue argues that Crane bears a "special burden" in establishing contractor immunity and that it cannot meet that burden. Zeringue relies heavily on a decision by Judge McNamara in which he considered and rejected the same affidavits that Crane has submitted to this Court in support of its Notice of Removal. *Cardaro v. Aerojet Gen. Corp.*, No. 05-2684, 2010 WL 3488207 (Aug. 27, 2010). Zeringue now makes the same evidentiary objections to this Court and urges the Court to follow Judge McNamara's example in *Cardaro*, and find Crane's evidence to be inadmissible and insufficient to meet its burden on removal.

Crane counters that Zeringue is incorrect as a matter of law to assert that Crane bears any type of "special burden" with respect to its removal under the federal officer removal statute. In fact, Crane contends that courts have recognized that federal officer removal is to be interpreted broadly, not narrowly. Crane points out that *Cardaro* notwithstanding, other circuit courts have considered the sufficiency of its affidavits in similar cases and have concluded that Crane met its burden on removal. *Cuomo v. Crane Co.*, 771 F.3d 113 (2d Cir. 2014); *Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014); *Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012). Crane posits that it need not actually prove its factual allegations in order to remove the case to federal court.

The Court agrees with Crane's contentions regarding its burden of proof. Crane need not actually "prove" its federal defense in order to trigger federal jurisdiction, and it does not bear a "special" burden on removal. But like all defendants who remove a case to federal court, Crane alone bears the burden of establishing subject matter jurisdiction. And even if § 1442 constrains removal to a lesser extent than other bases for removal which are more narrowly construed, it

remains that subject matter jurisdiction in a federal court is never conferred in doubtful situations regardless of the difficulties that a party faces in establishing it.

*Bartel v. Alcoa Steamship*, a case decided by the Fifth Circuit just two months ago, demonstrates this point. The *Bartel* plaintiffs alleged exposure to asbestos over the course of several decades while serving as merchant marines aboard various vessels, including United States Navy vessels. 805 F. 3d at 171-72. Although the vessels were Navy-owned, the Navy had contracted with civilian companies to operate the vessels for the government. Those private companies removed the action to federal court under the federal officer removal statute claiming that they had acted pursuant to federal authority "when they contracted with the United States Navy to operate and crew Navy ships with civilians." *Id.* at 172. The district court granted the plaintiffs' motion to remand and the defendants appealed.

The Fifth Circuit affirmed noting the importance of studying the *specific* contracts that governed the civilian parties' relationship with the Navy in light of the specific allegations that the plaintiffs were making. Keying in on the importance of identifying the specific exercise of government discretion that related to the plaintiffs' specific claims, the Fifth Circuit noted that the removing defendants could only produce one of the actual contracts that they were basing their factual contentions upon to support removal. *Id.* at 172. In light of the *evidence* presented, the Fifth Circuit was convinced that the removing defendants could do no more than show that the government owned the vessels in question. *Id.* at 174. There was no evidence that the government actually exercised continuing oversight over operations aboard the Navy vessels. *Id.* Because the defendants lacked sufficient evidence to establish the necessary causal nexus between their actions and the plaintiffs' claims, the court affirmed the district court's decision to remand the case. *Id.* at 174-75.

The reasoning in the *Bartel* decision, which Crane dismissed as inapposite and relegated to a mere footnote, reveals at least two important points in evaluating Crane's position on removal. First, a removing party cannot avail itself of federal officer removal jurisdiction by suffusing the entire case in federal involvement unless the specific federal action involved relates to the specific claims being made—this of course is the essence of the "causal nexus" requirement. Second, the Fifth Circuit was unwilling to accept the removing defendants' unsupported factual claims which were merely "theoretical." The court never suggested that the defendants were being held to an "airtight case on the merits" to support removal but the court also made clear that proper evidentiary support for the claims being made was essential. And of particular significance was the Fifth Circuit's unwillingness to ease the removing defendants' evidentiary burden in light of how much time had passed since the plaintiffs had actually served aboard Navy vessels. *Id.* at 174 n.3 ("While the defendants may find it inconvenient and difficult to locate evidence relating to events that occurred decades ago, ***that difficulty does not affect the burden of proof or permit us to guess*** that the evidence, if it were produced, would favor the defendants." (emphasis added)).

The nature of Zeringue's claims against Crane is that Crane supplied products to the Navy that included asbestos as a component, and that Crane did not warn of the hazards involved when using this equipment.[2] Crane does not deny that it supplied products containing asbestos to the United States Navy for use aboard its vessels during the timeframe when Zeringue served. Thus, Crane's burden is to *establish* inter alia that the government exercised its discretion in designing a product that incorporated asbestos. With respect to the failure to warn

---

[2] Zeringue's Petition lacks any detail regarding products that Crane supplied. The Court therefore finds it appropriate to credit Crane's theory of the case, and its interpretation of the Petition as asserting both asbestos-use and failure to warn claims.

claims, Crane must establish that the government, in the exercise of its discretion, approved or at least condoned the warnings, if any, for the products at issue. And of course Crane must establish these elements by competent proof.

Obviously, the most competent proof of the exercise of government discretion necessary to federal officer removal jurisdiction in this case would be the specific procurement contracts that Crane had in place with the Navy in the 1950s, and the design specifications for the equipment that Crane supplied to the Navy between 1952 and 1956. The design specifications for the equipment alleged to be the source of the injuries claimed by Zeringue would *presumably* demonstrate that it was in the government's exercise of discretion, not Crane's, that the decision to incorporate asbestos was made. And the contracts would *presumably* clarify that it was in the government's exercise of discretion, not Crane's, that the products contained whatever warnings, if any, that they contained when delivered.

But Crane has not produced the contracts and design specifications pertinent to this case. Instead Crane has submitted an affidavit from one its officers who is designated as the company's "person most knowledgeable" concerning asbestos litigation. (Rec. Doc. 1-3, Pantaleoni affidavit). Pantaleoni states that the manufacture of equipment for use on Navy vessels was governed by an extensive set of federal standards and specifications, which would have governed all aspects of design, including materials and warnings. (*Id.*). Pantaleoni never explains the basis for these factual assertions. Pantaleoni executed his affidavit in 2011, years before this lawsuit was even filed.

Crane also submits an affidavit from retired Rear Admiral David P. Sargent, Jr. (Rec. Doc. 17-1). Admiral Sargent has no first-hand information regarding the contracts and design specifications implicated by Zeringue's claims. In fact, Sargent, like Pantaleoni, executed his

affidavit over three years before Zeringue filed this lawsuit so he does not even purport to opine about any exercise of discretion specific to this case. Much of Sargent's 36 page affidavit is irrelevant to any issue important to Crane's removal to this Court but Crane relies on the affidavit to support its generalized contention that any equipment that it supplied to the Navy would have been governed by strict design guidelines that would have controlled not only the design of the product but also any warning labels.

Crane's "one size fits all" affidavits merely establish plausible generalities with respect to how the Navy operated during Sargent's time of service. Admiral Sargent then relies on his first-hand experiences to extrapolate opinions about how the Navy would have operated in the 1940s and 1950s. Sargent's presumptions about the past are plausible and based on his opinions one can plausibly assume that any equipment that Crane built for the Navy was indeed subject to detailed specifications. But just like mere ownership of a Navy vessel did not *ipso facto* establish the type of operational control that was implicated in the *Bartel* plaintiffs' claims, the fact that the equipment that Crane supplied to the Navy was subject to a detailed design specification does not necessarily mean that the design specification covered, *i.e.*, that the government exercised *its* discretion, with respect to the specific design and warning problems that are implicated by Zeringue's claims. Crane cannot convert its own presumptions regarding government discretion into competent evidence by placing the imprimatur of an impressive expert upon them.[3]

---

[3] In fact, the appellate court's review of the one contract that was produced in *Bartel* demonstrates the fallacy of what Crane is trying to do via Sargent's affidavit, which is not based on the contracts and design specifications at issue in this case. When the Fifth Circuit examined the one contract that the removing defendants had submitted in *Bartel*, that contract failed to demonstrate the type of operational control necessary to demonstrate government discretion related to the plaintiffs' claims. In fact, it tended to undermine the removing defendants' contentions. A removing defendant would have little incentive to locate and produce the pertinent contracts and design specifications, which again might not support its position on a federal defense, if it would suffice to have an expert offer presumptions about what those contracts most likely required.

In sum, the Court is persuaded that Crane's evidence is insufficient to meet its burden regarding the exercise of government discretion. Crane's evidence is generalized in nature and wholly speculative when applied to this specific case. Crane cannot reply upon the more generous interpretation given to removal under § 1442(a) to cure its glaring evidentiary deficiencies.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Remand (Rec. Doc. 12)** filed by plaintiff Howard Zeringue is **GRANTED**. This matter is **REMANDED** to the state court from which it was removed for lack of subject matter jurisdiction.

December 23, 2015

                                        JUDGE JAY C. ZAINEY
                                    UNITED STATES DISTRICT JUDGE